## CONSOLIDATED CAR–HEATING CO. v. MARTIN ANTI–FIRE CAR–HEATER CO.

(Circuit Court, N. D. New York.    January 20, 1896.)

1. PATENTS—INFRINGEMENT.
    One who takes the principal and substance of a patented invention cannot avoid liability for infringement by reason of unimportant and unsubstantial variations.

2. SAME—STEAM HOSE COUPLINGS.
    The Sewall patent, No. 363,553, for an improvement in hose couplings, adapted for use in the steam-heating apparatus used on American railways, and in which one of the main features is the locking and holding in engagement of the two parts of the coupler by gravity devices, shows invention of at least average merit, and was not anticipated; and its claims are infringed by a coupler made in accordance with the Martin patent, of September 11, 1894.

This was a bill in equity by the Consolidated Car-Heating Company against the Martin Anti-Fire Car-Heating Company for alleged infringement of a patent for steam hose couplings.

This is an equity suit for infringement based upon letters patent, No. 363,553, granted May 24, 1887, to James H. Sewall for an improvement in hose couplings adapted for use in steam-heating apparatus used on American railways. The patent is now owned by the complainant. The inventor says in the specification:

"This invention has for its object to construct a two-part hose coupling, each half of which is alike, which may be used to couple together hose for the passage of steam, air, water, gas, etc. The coupling herein to be described hangs by gravity and is provided with locking devices which keep the two halves locked together in all positions except when turned upward at the center. Each half is composed, preferably, of a single piece of metal having an upwardly-pointing neck or end, which is attached to the pipe or hose to be coupled, the body portion and neck having a passage through it to permit free and unobstructed passage for steam, air, water, or any other fluid. The body portion of each half of the coupling has at one side opposite to each other a broad flat extension having an inturned lip or flange at one edge, and the opposite side of each half is cut away to present a groove or passage, with which the inturned flange of the broad extension co-operates. At the lower end of the meeting face of each half of the coupler a rib is provided, extending half the width of said meeting face, and for the remaining distance the face is cut away to present a recess, which receives the rib

of the companion half, to thus form, in a measure, a hinge joint, upon which the two faces of the coupler are turned to disengage them from each other."

He then proceeds to describe the drawings and explain the manner in which the couplings are locked, how they are held in a locked position by gravity and how they are disengaged by turning them upward on the so-called hinge joint, formed by the engagement of the rib and groove at the lower side of the meeting face of one coupling with similar parts on the companion coupling. This unlocking will be accomplished automatically by the pulling apart of cars which have been uncoupled by accident or otherwise.

The claims are as follows:

"(1) A two-part hose coupling composed of like halves or portions, each half consisting of a body portion, A, having a suitable passage there through, a broad extension, a, locking flange, a', shaped as described, and located at one side of the body portion, a groove or passage, b, shaped as described, upon the other side of the body portion, and a joint connection at the lower side of the meeting face of the body portion, A, upon which the two halves may be turned to disengage them one from the other, substantially as described.

"(2) A hose coupling consisting of two like parts, each of which has a body portion, A, with an upturned end and a broad extension, a, located at one side of the said body portion, and provided with an overhanging flange, a', at its upper part, the said body portion having in its side opposite the said extension a groove, b, of the same form as the said flange, and the face of the body A having at its lower side a bearing portion to form a joint, whereby when the two parts of the coupling are together and are suspended by their ends they are locked against lateral displacement and their abutting faces are held together by gravity, but are adapted to be separated by a longitudinal strain, which moves the central portion of the coupling upward, substantially as set forth.

"(3) A two-part hose coupling composed of two like halves with abutting faces, suitable passages, and upturned outer ends, the two parts of the coupling having at the lower portions of the said faces a joint connection, and each of the said halves having on one side an extension provided with an overhanging locking flange, and in its opposite side an under-cut groove corresponding in form to the said flange, whereby when the coupling hangs by gravity the abutting faces will be pressed together and lateral displacement prevented, but when a lengthwise strain is applied the coupling will be separated, substantially as set forth."

It is conceded on all hands that these claims are, in all material matters, alike; that they all describe the same invention and contain, substantially, the same elements. It will only be necessary, therefore, to consider one of the claims. The first claim covers a two-part hose coupling composed of like halves, each half containing the following elements: First. A body portion, A, with suitable passage. Second. A broad extension, a. Third. A locking flange, a'. Fourth. A groove, b. Fifth. A joint connection at the lower side of the meeting faces of the body portion, A.

The defenses are lack of patentability and noninfringement, the latter being

the one *principally relied on.* The defendant contends that the claims must be limited to the specific structure shown and that when so construed they are not infringed for the reason that the defendant does not use all of the elements of the patented combination.

R. A. Parker, for complainant.
J. C. Sturgeon, for defendant.

COXE, District Judge (after stating the facts).   In June, 1889, a committee of the Master Car-Builders' Association described the requirements of an efficient car hose coupler as follows:

"The other conditions which a good coupler should fulfill are a straight opening when coupled, automatically uncoupled when cars are parted, interchangeability, ease of coupling, and while simple and inexpensive to construct, it should be reliable and steam tight."

The Sewall coupler fulfills all these conditions and it was the first to do so. It has a straight, unobstructed passage, and a steamtight joint. It is simple, strong, inexpensive, easily manipulated, interchangeable and has an automatic disengagement. The abutting faces are pressed and held together by a gravity lock which dispenses with any turning and twisting of the parts. This rotary action was a serious obstacle in prior couplers especially when steam was used. It tended to abrade, break and roll up the gaskets. If the coupler were not, in this way, rendered inoperative its efficiency was materially diminished.

I do not pause to consider whether the elements of the claims, when segregated, were old at the date of Sewall's invention, for it is of no moment. It cannot be successfully maintained that the combination of the Sewall patent is anticipated or that the prior devices singly or combined negative its novelty. The patents to Westinghouse, Kenyon and Schleifer are for a different type of coupler. The parts are put together by the mischievous screwing action just alluded to and the passage instead of being straight is vexed by two right angles. There are other differences but these are enough to distinguish these patents from the patent in hand. The other patents, to Imray and Eames, cover couplers designed for vacuum brakes where the parts are held together largely by atmospheric pressure and where it is necessary to place valves in the passages to prevent the vacuum from being broken when the parts are uncoupled. Both are English patents. Neither would operate as a conduit for steam and the Imray structure is inoperative for any purpose. As shown in the drawings it is a mechanical impossibility. In short, the Sewall steam-heating coupler is a distinct advance over what preceded it and is an invention, certainly, of average merit. Is it infringed?

It is manifest that one who uses an invention in its essence and spirit cannot escape because parts which are cast onto the patented structure are screwed onto the infringing structure, or because the parts differ in size and shape. When this fundamental canon of construction is remembered it will narrow the question of infringement to a single point, viz.: Does the defendant have the fifth element of the claims—the joint connection at the lower side of the

meeting faces? There can be no doubt that the defendant's structure has the other four elements. It has the body portion, A, with an upturned end and a broad extension. Its extension is not so broad as in the drawings of the patent but it is broad enough to accomplish identical results. The defendant's coupler has a locking flange and a groove which perform similar work to corresponding parts of the Sewall device. These parts are pivoted so that they rock or oscillate within narrow limits and the act of coupling and uncoupling is thus aided, perhaps, by a slight rotary motion, but this change, conceding it to be an improvement, in no way affects the identity of the two structures. In the eye of the law they are the same.

The question remains, does the defendant have the fifth element of the combination? As before stated this is the most important, and, in reality, the only question in the case. The object of the joint connection of the Sewall patent is to enable the two parts to engage and disengage simultaneously by giving them a central axis on which to turn. This is accomplished by the rib marked c and the recess marked c′ of the Sewall patent and by the "tongues or guides f f" of the Martin patent of September 11, 1894. The Martin specification says:

"These tongues operate as guides, and also operate to retain the sections of the coupling in line."

The means employed are not identical, it is true, but they accomplish the same result in substantially the same way. The sections of both the Sewall and Martin couplers are made to turn on a common center and disengage simultaneously. To adopt the language of the defendant's expert:

"The tongues certainly compel simultaneous disengagement, and they also serve as guides to assist the attendant in making the coupling which he often has to do in the dark."

This is just what the ribs and recesses of the Sewall patent do. The defendant's guides are higher up than the complainant's guides, but they do the same work and are clearly equivalents of the latter. There is nothing in the patent or in the prior art requiring the court to limit the first claim to the precise construction of rib and recess shown. The first claim describes as the fifth element "a joint connection at the lower side of the meeting face of the body portion, A, upon which the two halves may be turned to disengage them one from the other." That the defendant's structure has such a joint connection there can be little doubt. Where the defendant has taken the complainant's coupler in principle and in substance it would be a most narrow and illiberal construction which would deny all relief because of such unimportant and unsubstantial variations.

If further argument were needed to prove the practical identity of the two couplers it is found in the fact that a Martin half will couple and uncouple as readily with a Sewall half as with another Martin half. It follows that the complainant is entitled to the usual decree.